# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **PATRICIA TOLIVER,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL, Acting Commissioner of Social Security,** <br><br> **Defendant.** | **No. 17 C 4000** <br><br> **Magistrate Judge Mary M. Rowland** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Toliver filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Child's Disability Benefits under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. BACKGROUND

Plaintiff was born on January 7, 1955. (R. at 178). She was born with proximal femoral focal deficiency, a birth defect that caused her right leg to be shorter than her left leg. (*Id.* at 20, 46, 68, 318, 321, 607); *see* Proximal Femoral Focal Deficiency, Children's Hospital of Philadelphia, https://www.chop.edu/conditions-

diseases/proximal-femoral-focal-deficiency (last visited Nov. 1, 2018) ("Proximal femoral focal deficiency is a complex birth defect in which the upper part of the femur bone (in the thigh) is either malformed or missing, causing one leg to be shorter than the other."). In 1961, when she was almost six years old, Plaintiff had her right leg amputated below the knee. (R. at 20, 42, 69, 508, 510).

Under the Act, an individual may be entitled to Child's Disability Benefits (CDB) based on the earnings record of a deceased parent who was insured if, among other things, the individual is at least 18 years old and had a disability that began before she turned 22 years old. *See* 20 C.F.R. § 404.350(a).[1] In January 2013, at the age of 58, Plaintiff applied for CDB based on her deceased father's earnings record, alleging that she became disabled on January 1, 1961 because of high blood pressure, depression, sleep deprivation, gastric disorders, and a right leg prosthesis. (R. at 41, 118, 133, 178, 200). Her claims were denied initially on May 21, 2013, and upon reconsideration on May 6, 2014, after which Plaintiff requested a hearing. (*Id.* at 118, 128–33, 136–41).

On September 10, 2015, Plaintiff appeared for a pre-hearing conference with an attorney advisor from the Social Security Administration (SSA). (R. at 15, 29–56). The pre-hearing conference was meant to assist the ALJ with advising Plaintiff of her right to representation, ensuring that all relevant medical evidence was requested or obtained, and confirming Plaintiff's contact information. (*Id.* at 15, 32).

---

[1] The analysis for CDB claims is essentially the same as it is for Disability Insurance Benefits, except that a plaintiff must establish that she became disabled before turning 22 years old. *Tolefree v. Berryhill*, No. 16 C 7103, 2018 WL 4538783, at *4 n.7 (N.D. Ill. Sept. 21, 2018).

2

A few months later, on December 22, 2015, the ALJ held a hearing. (*Id.* at 57–108). Plaintiff, without attorney representation, appeared and testified, as did two of Plaintiff's sisters, Gloria Burton and Dorothea Taylor. (*Id.* at 64–101, 103–08). The ALJ also heard testimony from Richard Hamersma, Ph.D., a vocational expert (VE). (*Id.* at 98, 101–04). After the hearing, the ALJ requested records from John H. Stroger Jr. Hospital, Koeber's Prosthetics & Orthotic, and Fantus Clinic from the relevant period. (R. at 15). No records were available for the dates requested. (*Id.*)

On March 25, 2016, the ALJ denied Plaintiff's request for CDB. (R. at 12–28). The ALJ first determined that because the regulations provide for the payment of CDB if the claimant is 18 years or older and had a disability before attaining the age of 22, the relevant time period for consideration was from Plaintiff's 18th birthday, January 7, 1973, to the day before she turned 22 years old, January 6, 1977 (hereinafter, the Relevant Period). (*Id.* at 15, 63). Then, applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity during the Relevant Period. (*Id.* at 18). At step two, the ALJ found that Plaintiff had the following severe impairment during the Relevant Period: a congenital femoral deficiency/proximal femoral focal deficiency with an amputation below her right knee performed in 1961. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments during the Relevant Period that met or medically equaled the severity of Listing 1.05 or any of the other listings enumerated in the regulations. (*Id.* at 18–19).

3

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that, during the Relevant Period, Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she could only occasionally balance and climb ramps or stairs. She could never kneel, crawl, crouch, or climb ladders, ropes, or scaffolds. The claimant could never work around extraordinary hazards, such as unprotected heights and dangerous, unguarded, moving machinery, and could not use the right lower extremity for the operation of foot controls.

(R. at 19). Moving to step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 22). At step five, based on Plaintiff's RFC, age, education, and work experience during the Relevant Period, as well as the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as a surveillance system monitor, order clerk, and mail sorter. (*Id.* at 22–23). Accordingly, the ALJ concluded that Plaintiff was not under a disability during the Relevant Period. (*Id.* at 16, 23).

On March 22, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

4

it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the

5

Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff contends that the ALJ reversibly erred by finding that she did not have an impairment that met Listing 1.05B during the Relevant Period and by improperly discounting her testimony and the testimony of her sisters. After reviewing the record and the briefs, the Court finds that remand is necessary because the ALJ erred in evaluating the subjective symptom statements of Plaintiff and her sisters.

**A. The ALJ's Listing 1.05B Analysis**

Plaintiff first contends that the ALJ erred in determining that she did not meet Listing 1.05B during the Relevant Period. At step three of the sequential evaluation process, "a claimant is presumptively eligible for benefits" if she proves that she "has an impairment that meets . . . an impairment found in the Listing of Impairments." *Minnick v. Colvin,* 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(a)(4)(iii). To meet this burden, a claimant must show that her impairment satisfies "*all* of the various criteria specified in the listing." *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006) (emphasis added). Once a claimant has met her step-three burden, the "ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick,* 775 F.3d at 935 (quotations omitted); *Knox v. Astrue,* 327 F. App'x 652, 655 (7th Cir. 2009) ("Although an ALJ should provide a step-three

6

analysis, a claimant *first* has the burden to present medical findings that match or equal in severity all the criteria specified by a listing.") (emphasis added).

Listing 1.05B requires amputation of "[o]ne or both lower extremities at or above the tarsal region,[3] with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 1.05B. The ALJ determined that Plaintiff did not meet Listing 1.05B because "the record does not show the requisite objective medical findings or inability to ambulate effectively" during the Relevant Period.[4] (R. at 19). The ALJ also noted that although some records indicate that Plaintiff's right leg was amputated above the knee, it "was actually amputated below the knee." (*Id.*). The rest of the ALJ's listing analysis broadly stated that Plaintiff's impairments did not meet or equal any of the listed impairments. (*Id.* at 18–19).

Plaintiff argues that the ALJ improperly ignored the testimony offered by herself and her two sisters at the hearing and that this testimony, along with the medical evidence in the record, showed that she met Listing 1.05B during the Relevant Period. The main problem with this argument, however, is that there is no medical evidence indicating that Plaintiff met all the criteria of Listing 1.05B during the Relevant Period. The ALJ unsuccessfully attempted to obtain medical records from the

---

[3] The tarsal region is the ankle. Definition of "tarsus," *Dorland's Medical Dictionary* http://www.dorlands.com (last visited Nov. 1, 2018).

[4] Although the ALJ did not refer specifically to subsection (B), the other subsections of Listing 1.05 require the amputation of at least one hand, which is not at issue here. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 1.05A, 1.05C.

7

Relevant Period, and Plaintiff concedes that there are no such medical records. (R. at 15, 18, 20; Pl.'s Mem., Dkt. 38-1 at 4).

Instead, Plaintiff argues that later medical records—the earliest of which is from 2007, thirty years after the end of the Relevant Period—show her issues ambulating in recent years and that, because "medical care, access to medical care, and advances in prosthetics for [amputees] have improved over time," she logically would have had similar (or even more debilitating) issues during the Relevant Period. (Pl.'s Mem., Dkt. 38-1 at 9–10; Pl.'s Reply, Dkt. 43 at 3). This speculation is contradicted by Plaintiff's own statements to the SSA in October 2013, in which she indicated that the issues with her prothesis have gotten worse, not better, over time: "Now I'm older and my body isn't like it use[d] to be. I can't do half as much as I use[d] to. . . . The older I get the worse off it is. Soon I might be in a wheelchair, because of other problems [I] can't wear it any more because it bothers me more. It don't get better it get[s] worse[.]" (R. at 248–49). More importantly, the records Plaintiff attempts to rely upon are simply much too far removed from the Relevant Period to shed any light on how she functioned during that stage in her life. *See Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (explaining that evidence suggesting disability during the late 1990s "provided no support for the proposition that [the claimant] was disabled at any time prior to December 31, 1987"). Indeed, a claimant must "present *medical findings* that match . . . in severity all the criteria specified by a listing." *Knox*, 327 F. App'x at 655 (emphasis added); *see Williams v. Colvin*, No. 15 C 8106, 2016 WL 6804583, at *4 (N.D. Ill. Nov. 17, 2016) (finding that the claimant did not meet his

8

step-three burden when he failed to "identify *any* medical evidence that satisfies the listing criteria") (emphasis in original).

Here, Plaintiff presented no such medical findings or medical evidence. And although Plaintiff and her sisters testified about her impairment and limitations during the Relevant Period, this testimony is not considered medical evidence. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) ("[S]ubjective complaints are the opposite of objective medical evidence[.]"). Even if this testimony was fully credited by the ALJ, it alone could not have entitled Plaintiff to a finding of *presumptive* disability based on Listing 1.05B. *See Hopson v. Colvin*, No. 13 C 5993, 2014 WL 6883373, at *8 (N.D. Ill. Dec. 5, 2014) (explaining that subjective allegations, such as those set forth in testimony, cannot alone meet a claimant's burden to produce medical evidence showing that a listing is met); *see also* 20 C.F.R. § 404.1529(a) (Apr. 1, 2015 ed.) ("[S]tatements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled[.]"). Thus, given the lack of relevant, contemporaneous medical evidence, Plaintiff failed to meet her burden of demonstrating that she met Listing 1.05B during the Relevant Period.

Citing the Seventh Circuit's decision in *Minnick*, Plaintiff also argues that the ALJ's analysis of Listing 1.05B was inadequate. *See Minnick*, 775 F.3d at 935–36 (characterizing a two-sentence listing analysis as "the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing"). Before an ALJ must provide a satisfactory step-three analysis, though, the claimant must *first* present medical evidence showing that the

9

specified criteria of a listing are met. *See Knox*, 327 F. App'x at 655. In finding the listing analysis at issue inadequate, the *Minnick* court identified "several aspects of the record that could in fact meet or equal" the listing at issue. 775 F.3d at 936. But here, Plaintiff did not provide any medical evidence showing that she could have met Listing 1.05B during the Relevant Period. Thus, any inadequacy in the ALJ's Listing 1.05B analysis was not a reversible error. *See, e.g., Knox*, 327 F. App'x at 655 (finding that where the claimant did not present any medical evidence showing that a listing was met, the ALJ's failure to refer to a specific listing at step three did not warrant remand); *Salgado v. Colvin*, No. 13-cv-8196, 2015 WL 4637968, at *9 (N.D. Ill. Aug. 4, 2015) (noting that because the claimant failed to show that he met Listing 1.05B, any errors in the ALJ's analysis were harmless).

In sum, Plaintiff had to present relevant medical evidence showing that she met Listing 1.05B during the Relevant Period to show that she was presumptively disabled. She did not do so. Accordingly, the Court finds no reversible error in the ALJ's determination that Plaintiff did not meet Listing 1.05B during the Relevant Period. The same cannot be said of the ALJ's evaluation of the hearing testimony of Plaintiff and her sisters.

**B. The ALJ's Subjective Symptom Evaluation**

The Court finds that the ALJ improperly discounted the testimony of Plaintiff and her sisters when crafting the RFC and the hypothetical questions to the VE. Between steps three and four of the sequential evaluation process, the ALJ determines a claimant's RFC "based upon the medical evidence in the record and other evidence,

10

such as testimony by the claimant or [her] friends and family." *Craft*, 539 F.3d at 675–76; 20 C.F.R. § 404.1520(a)(4). The ALJ then uses this RFC to determine whether the claimant can perform past relevant work or other jobs in the economy. *See Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir. 2010); 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

Here, the ALJ's RFC assessment and hypothetical questions incorporated a sedentary exertion level, which requires the ability to lift ten pounds at a time; to occasionally lift or carry articles like docket files, ledgers, and small tools; and to stand and walk for a total of approximately two hours during a workday. (R. at 19, 102–04); 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996). In determining the RFC and hypothetical questions to the VE, the ALJ considered the subjective symptom statements of Plaintiff and her sisters about the "intensity, persistence and limiting effects" of her symptoms during the relevant period.

As set forth by the testimony of Plaintiff and her sisters, Plaintiff's prosthesis caused irritating sores on her amputated leg, and it always hurt to walk while wearing the prosthesis. (R. at 82, 90–91, 94–96). While wearing the prosthesis, Plaintiff did not walk well, and she needed additional support to walk around. (*Id.* at 71, 77–78, 94). She would hold a stroller in front of her for support and balance, and she "always had a buggy" to use to walk around the house. (*Id.* at 71–72). If Plaintiff did walk without additional support, she walked slower than others and with a limp. (*Id.* at 85, 90–91). Because of the pain caused by her prosthesis, Plaintiff would oftentimes take it off and move around by using crutches, crawling, or pushing herself

11

around on a skateboard. (*Id.* at 85–86, 88, 90–91). As for lifting and carrying, Plaintiff could not lift heavy bags of groceries to put them into or take them out of a car. (*Id.* at 89). And although Plaintiff could pick up her children, she testified that she could not walk around with them. (*Id.* at 70–71). Plaintiff "was always sitting down" when holding a baby because her sisters were worried that she would drop the baby if she walked around. (*Id.* at 94). The hearing testimony, if credited, would call into question Plaintiff's ability to perform sedentary work during the Relevant Period.

The ALJ, however, found Plaintiff's testimony "not entirely credible" because: (1) there was "no objective evidence in the record to fully support the extent of limitations and restrictions" that Plaintiff alleged; and (2) Plaintiff's "ability to raise three children and perform some activities of daily living," such as cooking, cleaning, grocery shopping, and caring for her own personal needs, "raise[d] doubt as to whether [she] was suffering symptoms severe enough to keep her from performing work within" her assessed RFC. (R. at 20). The ALJ also gave little weight to the testimony of Plaintiff's sisters because it did "not provide objective evidence of how [Plaintiff] was functioning" during the Relevant Period.[5] (*Id.* at 21). The Court finds that the reasons provided by the ALJ for discounting the symptom statements of Plaintiff and her sisters are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

---

[5] SSR 06-03p addresses how ALJs are to consider information provided by non-medical sources, such as siblings. SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006).

In evaluating hearing testimony—whether from a claimant or her family members, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, at *7. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562. Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence (medical or lay) that does support a claimant's subjective symptom statements. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Although the Court will uphold an ALJ's subjective symptom evaluation if it "is not patently wrong," the ALJ "still must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). Simply reciting the factors set forth in the regulations is not enough: "[w]ithout an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

The ALJ gave legally insufficient reasons for discounting Plaintiff's testimony. One of the two reasons the ALJ gave was that Plaintiff's ability to give birth to and "raise three children and perform some activities of daily living," such as cooking, cleaning, grocery shopping, and caring for her own personal needs, "raise[d] doubt as to whether [she] was suffering symptoms severe enough to keep her from performing work within" her assessed RFC. (R. at 20). "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating" the claimant's testimony, "this must be done with care," as an "ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ did not analyze Plaintiff's daily activities "with care." For one thing, Plaintiff's ability to give birth and to raise children does not shed any light on how she would have faced "the challenges of daily employment in a competitive environment." *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). What is more, although the ALJ recognized that Plaintiff needed "some help with her children and grocery shopping," the ALJ's analysis did not properly take into account how severely limited Plaintiff was in her ability to perform these and other activities. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities."). Far from just getting "some" help in caring for her children, Plaintiff likely would not have been able to take care of her children without the help of her family and friends. (*See* R. at 69–71, 88, 93). Indeed, Plaintiff's sister testified that they "used to have to help"

14

Plaintiff take care of her children "because she couldn't do it by herself." (*Id.* at 93). As for grocery shopping, Plaintiff could not go to the store alone, and when she did go to the store, shopping for Plaintiff consisted of riding around in a cart or, if a cart was unavailable, simply sitting on a bench and allowing someone else to pick up the items she needed. (*Id.* at 71, 89, 94–96). Plaintiff was similarly limited in her ability to clean and cook. Plaintiff's sisters helped her mop and sweep, and when Plaintiff did clean by herself, she did so by scooting herself around on a crate. (*Id.* at 73, 93). And Plaintiff cooked while sitting on a chair or using crutches, as she could not stand for more than an hour. (*Id.* at 80, 90).

Besides the ALJ's faulty analysis of Plaintiff's daily activities, the only other reason the ALJ gave for finding Plaintiff "not entirely credible" was the absence of "objective evidence in the record to fully support the extent of limitations and restrictions" that Plaintiff alleged. (R. at 20). But this finding, even if accurate and supported, cannot constitute the sole remaining justification for the ALJ's adverse testimony evaluation. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (explaining that a claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence"); *Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) (explaining that "[b]ecause all of the other reasons given by the ALJ" for her subjective symptom evaluation "were illogical or otherwise flawed," the lack of supporting medical evidence alone could not support the ALJ's finding that the claimant was not credible). Thus, the ALJ's evaluation of Plaintiff's testimony requires remand.

So does the ALJ's evaluation of the testimony of Plaintiff's sisters. The ALJ rejected this testimony solely because it did "not provide objective evidence of how" Plaintiff functioned during the Relevant Period. (R. at 21). Again, an ALJ cannot use the absence of objective evidence, *by itself*, to discredit testimony. *See Hill*, 807 F.3d at 869; *Thomas*, 745 F.3d at 806–07. Furthermore, to the extent the ALJ discounted the sisters' testimony based solely on their relationship to Plaintiff, this too was erroneous. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (finding that the ALJ could not automatically discount the testimony of the claimant's fiancée based on a perceived bias arising out the relationship); *Smith v. Colvin*, 9 F. Supp. 3d 875, 889 (E.D. Wis. 2014) ("The ALJ should not, however, simply presume that the lay witness is biased based on his or her relationship to the claimant and ignore the testimony on that basis.").

In sum, the testimony given at the hearing by Plaintiff and her sisters, if credited, brings into question Plaintiff's ability to perform work even at the sedentary exertional level during the Relevant Period. Although the ALJ was not required to believe this testimony, the reasons she gave for discrediting it are either legally insufficient or not supported by substantial evidence. As such, the ALJ's evaluation is "patently wrong," which requires remand. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). On remand, the ALJ should re-evaluate Plaintiff's testimony under SSR 16-3p and the testimony from Plaintiff's sisters under SSR 16-3p and SSR 06-03p. After re-evaluating this testimony, the ALJ should craft an RFC and hypothetical questions reflecting those restrictions that she finds credible.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [38] is **GRANTED**, and the Commissioner's motion for summary judgment [41] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 6, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge